## Mickle's Administrator *versus* Miles.

1. A landlord, after the decease of his tenant, may distrain the property of a sub-tenant on the premises, for the rent which accrued previously to the principal tenant's decease, not exceeding in amount the rent of one year.

2. Where the administrator of a tenant takes possession of the leased estate, and continues on under the terms of the lease, the profits of the land are first liable for the payment of the rent, and only what remains is assets of the estate.

3. In case of an unlawful distress, the jury will allow the plaintiff such damages as will compensate him for the injury sustained.

4. In estimating the amount of damages caused by an unlawful distress, it is right for the jury to take into consideration the amount of rent paid thereby.

5. If the defendant in an action for making an unlawful distress, chooses to avail himself of the amount of rent actually paid by the distress, in mitigation of damages, he cannot afterwards treat the distress as a nullity, and sue for the whole rent.—Per M'CALMONT, P. Common Pleas, approved by the Supreme Court.

6. The case of *The Commonwealth* v. *Contner*, 6 Harris, 439, commented upon and explained.

7. A rent may issue out of lands and tenements corporeal, or out of them and their furniture.

8. The goods of a deceased lessee are not liable to distress.

ERROR to the Court of Common Pleas of *Warren county*.

Francis Mickle, on the 17th day of December, 1849, leased, from Frederick Miles, a farm *and a quantity of personal property*, in consideration for which, said Mickle was to pay said Miles, $481.66, Dec. 1, 1850—$495, Dec. 1, 1851—and $495, Dec. 1, 1852.   On the 25th day of October, 1850, Mickle leased the same property, with some reservations, to one Walker Northrop, who took possession, and continued the same to the termination of the lease, paying rent to Mickle.   Francis Mickle died in July, 1852, and letters of administration were granted to Holcomb, October, 9, 1852.   At the time of Mickle's death, $100 of the amount due December 1, 1851, was unpaid.   November 25th, 1852, Miles issued a landlord's warrant, and dis-

[Mickle's Administrator *v.* Miles.]

trained a portion of the property in dispute in this case, being a quantity of butter in the cellar of the house where Northrop resided, and afterwards directed the same to be sold, and became the purchaser of sufficient to satisfy the rent due as aforesaid. John Pierce, the co-defendant, was the constable who made the sale.   Holcomb forbid the sale.   On the 7th December, 1852, Miles issued another warrant for the amount due December 1, 1852, to wit, $495, and other property on the premises leased, was taken and sold by direction of Miles, for $495, and costs of proceedings on the landlord's warrant.

To recover damages for the property thus taken and sold, this suit was instituted.

The following points were presented by plaintiff, requesting the court to charge thereon:

1. The lease between Frederick Miles and Francis Mickle, gave defendant no right to distrain and sell the property in question.

2. Defendant had no right to distrain and sell under the landlord and tenant law, for rent accruing after the decease of the tenant Mickle.

3. Defendant had no right to distrain and sell, after the death of the tenant, for rent due before his death.

6. The measure of damages is the value of the property taken by defendant from plaintiff.

The court, M'CALMONT, P., charged the jury as follows:

" In this case it is admitted, that there was rent due Miles at the death of Mickle, for which Miles distrained, after the decease of the tenant, Mickle, and, also, that a yearly payment became due in December, 1852, after the decease of the tenant, for which Miles also distrained the property in the possession of the under-tenant, Northrop, on the premises.   It is admitted that the proceedings of distrainment were regularly pursued, but it is contended that, according to the tenor of the lease between Miles and Mickle, there could be no right of distress, and that the defendants were trespassers.   For the plaintiff, the case of the *Commonwealth* v. *Contner*, 6 Harris, has been cited, and for the defendant, the case of *Newman* v. *Anderson*, 5 Bosanquet & Puller, and some other authorities.

" It may, perhaps, be regarded as a dictum in the case of the *Commonwealth* v. *Contner*, ' that if a lease so mixes the real and personal property together, that it cannot be determined how much of what is called the rent is to be paid for the chattels, and how much is the profit of the land, 'there can be no distress for the non-payment of it,' but if so, it seems to be a profound dictum, and is entitled to great respect.   I am not certain that it is not so unqualified and broad as to cover this case, and that I

ought so to declare; but I am convinced, by the argument and the authorities cited by the defendant's counsel, that it does not express the rule of law as applied to a lease of this kind. I accordingly instruct you, that as for the rent that fell due upon the lease given in evidence, Miles, the defendant, had a right to distrain the property in the possession of the tenant, on the premises. I cannot distinguish this from a case where ready furnished lodgings are let, or a brewery with the utensils; the rent issues out of the land, and must be so regarded; but the fact that some personal property is leased with the land, does not, I think, take away the right of distress. In two cases which have come before me, I have taken the law from the case in 6 Harris; but the number of leases of the kind in question, the understanding of the profession, and the authorities to which we have been referred, have induced me to hesitate and change my opinion, and there will probably be no better opportunity than the present to have this question finally settled in this State, if there be still room for doubt. It is unnecessary to give an opinion upon the other points, but as it is wished to review the whole case we will pass upon them.

" That part relating to the 4th and 5th points of plaintiff, omitted.

" 2. In considering the question of damages, it is important to determine even if Miles had not the right to distrain, what amount of rent he would have been entitled to from the administrator, in preference to the other creditors of the estate, in case of its insolvency. And, first, he would have been entitled to the rent due at the death of Mickle, not exceeding one year's rent. Second—When the administrator took possession, and continued on under the terms of the lease, the profits of the land could only be regarded as assets of the estate, after deducting sufficient for the payment of the rent. It was the duty of the administrator to pay the landlord out of the profits of the leasehold, and I am not certain that the administrator would not have been liable, *de bonis propriis*, for non-payment of it.

" Had the distress been unlawful, the jury would have allowed the plaintiff such damages as would compensate him for the injury done to him by the unlawful taking. In estimating the damages, it would be right for the jury to take into consideration, in assessing the amount, the rent which was paid by the distress. 2 Greenleaf's Ev. sec. 266. The plaintiff's counsel say not, because, in an action against the plaintiff for the rent, Miles could recover the whole if the distress was void. But we do not think so. If Miles chooses to submit it here to the jury, or allow the court to submit it to the jury, he could not afterwards claim it.

" The plaintiff, if entitled to recover, would be allowed the damages arising out of the wrongful act. In estimating them, it is

right for the jury to take into consideration the benefit resulting to him from the transaction. If, a just debt is paid by the trespass, it is right to take it into consideration in mitigation of damages.

"In a case where an execution has been issued and the money made by the sheriff, it is admitted that the plaintiff, if sued by the defendant, as a trespasser, could have the benefit of the debt paid by the sale in mitigation of the damages; but it is said there is a distinction between that case and this; there the debt is paid in contemplation of law, but here it has never been paid.

"We can, however, see no real distinction between the cases. In each the plaintiff can recover the damages he has sustained immediately from the transaction; and, in estimating the damages, the immediate benefit resulting to him from the design of the trespasser, may be taken into account in mitigation of the damages."

The charge of the court was the error complained of.

*Wetmore*, for plaintiff in error.

Rent is defined as a certain profit, issuing yearly out of *lands and tenements corporeal*. 2 Blackstone's Com. 41.

In this case, Miles lets to Mickle the land described in the lease, together with thirty-five cows, a quantity of milk pans, a team, &c.; in addition to which, certain duties are imposed on Mickle. The lease then provides as follows : "and in consideration thereof, the said Mickle is to pay the said Miles," &c. The annual value of the personal property is probably equal to that of the land, and the " consideration," named in the lease, is for the use of the personal and real estate. There is no distinction made, and no indication that any portion of the yearly payment was to be applied to the annual value of the land, as distinguished from the value of the personal property.

The case of the *Commonwealth* v. *Contner*, 6 Harris, 439, should have ruled this case below. There the lease was of the Matilda furnace property, and farm connected therewith, also the personal property, consisting of stone, teams, &c., and the rent was $3500. If the personal property was paid for, then the rent of the real estate was to be $2500. In delivering the opinion, Black, C. J., says : "Now a sum of money, payable periodically, for the use of chattels, is not *rent* in any legal sense of the word. It cannot be distrained for; and unless it can, it is not demandable out of the proceeds of a sheriff's sale, for this right comes in place of a distress, by the plain words of the statute. If, therefore, a lease so mixes the real and personal property together, that it cannot be determined how much of what is called the rent is to be paid for the chattels, and how much is the profit of land, there can be no distress for non-payment of it."

The court below were in error, in saying the case just quoted may, perhaps, be regarded as a dictum. In determining the extent of the liability of sheriff Contner, it became necessary to fix the amount of *rent* legally due to the landlord of the defendant, against whom the execution has issued.

The case of *Newman* v. *Anderson*, referred to in the opinion of the court below, differs in its facts from the present case, and if it did not, there are reasons which would control the mind of an English judge, in construing a lease in favor of the landlord, which do not exist in Pennsylvania.

At common law, the executor and administrator of the deceased landlord, had no remedy by distress for the arrearages of rent due in his life, to remedy which, the statute 32 Henry 8, ch. 37, was passed. Vide Robert's Digest, 255. The first section of this act is embodied in the 29th section of the Act of the 24th of February, 1834, relating to executors and administrators. Vide remarks of the commissioners in relation to the same; Hood on Executors, 525, sec. 29. This act provides, that the executors and administrators of every person who was the proprietor of any rent-charge, or other rent or reservation in the nature of a rent, may distrain therefor, &c.

As there is no act of assembly or English statute in force in this State, extending the right of distress after the death of the tenant, the common law, that gave no remedy to the representatives of the landlord, prevails, and denies any remedy against the representatives of the tenant; and plaintiff's 2d and 3d points should have been answered in the affirmative.

Again, the 21st section of the Act of Assembly, just referred to, directs the order in which the administrators shall pay the debts of the decedent; and second in that order, is rent due at the time of the death, not exceeding one year. If Miles had the right of distress, it was only for the rent due at the death of Mickle, to wit, $100, and plaintiff's 2d point should have been answered in the affirmative; to affirm the doctrine of the court below, and permit a distress for rent *accruing after the decease* of the tenant, defeats, in case of an insolvent estate, the order of distribution directed in the section referred to, to be made by the administrator.

The court were manifestly wrong in the rule stated in the charge as to the measure of the damages. Plaintiff requested the judge to say it was the value of the property in controversy, which is refused, and in place thereof says, "it would be right for the jury to take into consideration, in assessing the amount, the rent which was paid by the distress." By this rule, one creditor of an insolvent estate appropriates all the property in satisfaction of his own debts; and when another creditor asks from the Orphans' Court, an order on the administrators to make dis-

[Mickle's Administrator *v.* Miles.]

tribution, the answer is, that there is nothing to distribute, that a creditor had made an illegal distress and sale of all the property, and in a suit in trespass, brought against him for the same, the court had permitted the jury to allow, by way of defence, the amount of the claim that was paid by the distress and sale. A statement of the rule discloses its fallacy.

There is also a fallacy in the position of the court, that the rent is paid by an illegal and void distress and sale. The case of *Freeman* v. *Caldwell*, 10 W. 10, was evidently in the mind of the judge, which decides, that a judgment is satisfied by a levy and sale of goods to its amount, under a *fieri facias*, although the title of the plaintiff, who was the purchaser thereof, be subsequently defeated in an action of replevin. The decision is based on the position, that in judicial sales there is no warranty and *caveat emptor*. There is a legal judgment and execution, and an extinguishment of the interest of the defendant, if he has any in the property sold, which vests in the purchase. But when there is a distress and sale without authority of law, the whole proceeding is *coram non judice* and void, and no title vests in the purchaser, and we cannot understand how the claim of the landlord is satisfied. There is no legal record showing a satisfaction, and no consideration received by the landlord.

*Church*, for defendant in error.

The only questions material to discuss here, are the right of distress under the lease and the competency of the witnesses, Harman and Pike.

The right to distrain is a common-law incident to every demise or lease of corporeal hereditaments, where the rent or consideration reserved is certain and payable at a specified time. Co. Lit. 142, a, s. 213, 214; Bro. Ab. tit. Dis. 5, 8, 15. And it is independent of any stipulation in the lease. Arch. L. & T. 106. Even a restrictive clause in the lease is held inoperative. *Shrewsbury* v. *Wilson*, 7 Eng. C. L. R. 131, 142. And although arising in general out of hereditaments corporeal only, yet it may be reserved as *rent* on demise of the *herbage* of land. Co. Lit. 47, a, 142, a ; Arch. L. & T. 30, 106. Here the corporeal hereditament demised is the main subject that sustains the reservation of the rent, and hence the incidental covenant on the part of lessor securing or stipulating for collateral matters, although mainly inviting or inducing the tenancy, yet it does not take away the right of distress, nor destroy the peculiar character of the general consideration. Otherwise, in the modern condition of society, and the almost universal relation of landlord and tenant, the right of distress would be effectually abolished in nearly all cases. In the improved condition of society, few leases will be found wherein dependent covenants do

[Mickle's Administrator *v.* Miles.]

not form between the parties an essential consideration or inducement for the rent. Such and similar leases have prevailed time out of mind, and yet the right of distress never questioned except, perhaps, by inference from the *dictum* found in *Commonwealth* v. *Contner,* cited from 6 Har., but wherein the whole court sustained the right of distress, so far, at least, as the entire essential merits of that case is concerned. The unvaried practice of centuries is hardly to be disturbed by the chance *dictum* found in one isolated case. Opposed to this incidental dictum, we find not only the uniform practice of centuries before alluded to, but the very point adjudicated by one of the most respectable and learned courts of England, which remains undisputed for half a century. *Newman* v. *Anderton,* 5 Bos. & Pul. 224. In replevin, (as defendants aver this should have been,) defendant avowed the taking by distress for rent of a house, "*with certain furniture and effects,*" therein under a lease or demise. A verdict was rendered for defendant, and application was made by plaintiff to set it aside on the ground that there was no right of distress under such a lease. The same course of argument was adopted there as here. And the court, after holding the question under advisement, said the right of distress in like cases had never been before questioned, although of frequent occurrence. And the chief justice cites cases where the principal inducement to the lease is the personal property or utensils accompanying the premises, and yet, he says, he never heard it doubted but the landlord might distrain for the rent; and whether the goods be worth five shillings or five hundred pounds, the case must be the same. The rent is construed to issue out of the realty, and not the goods, although the value of the former is greatly increased by the latter. *Spencer's case,* 5 Co. R. 17, is also cited to show that, although the covenant to pay the rent is obligatory on the lessee's assignee occupying, (as Northrop here,) yet the covenant to return the personalty at the end of the lease is not; for, admitting the rent reserved was increased by the personalty with the realty, yet the rent issues out of the land only.

The chattels are not said to be "let on tenure," as is the farm. The farm is all that is leased. The rent issues out of that alone; to assume it to issue out of the chattels is no better than out of the labor of the landlord in repairing fences, furnishing seed, &c., or rather out of his covenants to do so, which would be an absurdity. In the case of a lease of a plantation with slaves, therewith reserving a gross sum as rent payable annually, it was held the remedy by distress might be resorted to. 3 Munford, R.; 3 Bac. Ab. Dis. (Bouv. ed. 1846.) Bradby on Dis. 25, 26, 103, 104.

The general rule is that property of the tenant in possession

of the premises, and property on the premises, even if a stranger's, is subject to distress.  Bradby, 106.  And when the lessee dies, and even the administrator and widow remain in possession, the lessor may distrain for rent accruing before as well as after the death.  See *Braithwaite* v. *Cooksey*, 1 H. Bl. R. 465 ; Toll. Ex. 475; Bradby, 112 ; *Howey* v. *Smith*, 1 Barbour, (N. Y.) 377.  The rent accruing and due from Northrop was only assets in the plaintiff's hands beyond the rent due Miles, the head landlord.  Toll. on Ex. 141, 165, 279.  Northrop, as under-tenant, who had attorned to Miles, the head landlord, could and did retain the property to indemnify him for his liability for the rent or use and occupation of the premises.  *Sapsford* v. *Fletcher*, 4 Term R. 512 ; Arch. L. & T. 147, 302.  Mickle, having underlet his whole term to Northrop, had no right of distress whatever, especially as he had stipulated that Northrop should at the end deliver up possession to Miles.  2 Wils. 375 ; 1 W. & S. 411. The right of Mickle, or of his administrator, was therefore not to the property distrained, but at most only as *a chose in action* and assets beyond the defalcation allowed Northrop, as before stated. Hence the plaintiff could not maintain trespass for property not in existence at the death of his intestate, and of which he had neither the actual nor constructive possession, nor the right of possession, while the rent was unpaid to Miles.  Arch. L. & T. 145, 147 ; Went. on Ex. 192, 199 ; Toll. 152 ; Kent, 347, 348, 350 ; *Briggs* v. *Thomson*, 9 Barr, 338 ; *Rinehart* v. *Olewine*, 5 W. & S. 157.  If Northrop had the right to retain the property till the rent was paid to Miles, the plaintiff had not even constructive possession.  *Woodruff* v. *Halsey*, 8 Pick. 335.  If the plaintiff has any remedy, it is in replevin, and not trespass ; *Caldcleugh* v. *Hollingsworth*, 8 W. & S. 302 ; even where the distress is wholly without authority of law if formal, and the relation of landlord and tenant existed.  13 S. & R. 52.  The errors assigned are, therefore, immaterial.

The fourth specification of error is of no moment now, and need not be discussed.  The seventh, although not properly assigned, yet the main principle involved has already received attention.  In *Haskins* and *Houston*, 4 P. L. J., the Common Pleas held a distress irregular, after the death of tenant in possession, before letters of administration ; thereby implying that it could be made afterwards.  S. P. in Arch. L. & T. 119 ; *Wallaston* v. *Hakwell*, 10 L. J. 303.  The fifth and sixth specifications are not in accordance with the rules of court.  Nor has the plaintiff attempted to sustain them in argument.  It is supposed they have been abandoned.  The admission of a party that a witness he calls is interested excludes him.  *Casmalt* v. *Platt*, 7 W. 322.  And so, *a fortiori*, can the admission of any fact tending to establish such interest be received in evidence.

[Mickle's Administrator *v.* Mlles.]

The testimony offered went to increase a fund in which the witness was entitled to participate, and he was therefore incompetent from his direct interest. The estate was $400 insolvent, and the witnesses were offered to increase the assets more than that amount. *Wilkinson* v. *Turnpike Company*, 6 Barr, 398; *Thomas* v. *Brady*, 10 Id. 107. The transfer of William to Harrison Pike was colorable, and is so to be considered until the contrary appears. See *Post* v. *Avery*, 5 W. & S. 510; *Leiper* v. *Price*, 6 W. & S. 555; *Patterson* v. *Reed*, 7 W. & S. 144, 317; 8 W. & S. 274; 1 Barr, 173; *Paull* v. *Mackay*, 3 W. 110. And being incompetent before, his competency was not restored by assigning his claim to his son.

The opinion of the court was delivered May 20, 1857, by

LOWRIE, J.—Legal definitions are, for the most part, inductive generalizations derived from our juridical experience; and, in order to be complete and adequate, they must sum up the results of all that experience, as they are to be found in the special cases that belong to the class to be defined. The ordinary definition of rent, as a profit issuing yearly out of lands and tenements corporeal, is defective, in overlooking some of the cases that belong to the class; as where a furnished house or a stocked farm is leased, which are common instances. 5 Bos. & P. 224; 5 Co. 16, b; 1 Leon. 42. In such cases the personal property is really part of the consideration of the rent, and it is only by a fictitious accommodation of the case to the defective definition that it can be said that the rent issues exclusively out of the land.

Not having noticed the inadequacy of the induction on which the definition rests, we did not suspect any danger in drawing the very obvious deduction that we did in *Commonwealth* v. *Contner*, 18 State R. 447. And yet, in practical matters, this danger accompanies all deductive reasoning, unless when conducted with a cautious attention to, and a sincere respect for, the results of experience; for, without this, any error or deficiency on the premises or definitions, must vitiate the process and the conclusion. We are glad that the learned judge who tried this case was not misled by our mistake. He tried the question rightly. A rent may issue out of lands and tenements corporeal, or out of them and their furniture.

So far as the other questions are stated in our paper-books, we can discover no error in them; and, if it were otherwise, we could not reverse the case without the evidence showing that these questions truly arise. It is agreed that the goods of a deceased lessee are not liable to distress; but the goods seem to us to have belonged to Northrop, the assignee of the term for the part of the land where they were seized, because it does not

appear to us that they had been delivered to the lessee's adminis-trator. The main point in the charge being right, the others do not require to be considered.

Judgment affirmed.